J ones, J.
 

 While counsel for the prisoner and for the state both discuss the weight of the evidence relating to the higher degree for which the prisoner was convicted, we confine ourselves wholly to the legal question presented, viz.: Was there error in the court’s charge to the jury? In considering this question the proof offered, respectively, by the state and the defendant, can be briefly stated. About 2:20 a. m., September 18, 1927, the defendant, Freeman, had parked his auto on a street in Dayton. Horn, a policeman of that city, observing the parked auto of the defendant, rode up to it on his motorcycle and stopped beside Freeman’s car. What transpired in the killing of the policeman is developed by the testimony of an eyewitness and by circumstances attending the homicide. The state offered as a witness one Pappas, who testified that at some distance away he perceived the officer on the running board of the car, a gun in his right hand and-a flash light in his left; that the officer told Freeman, who was at the wheel of his car, to come out, and then walked around to his motorcycle; that Freeman left the car and started toward the officer. Pappas testified that the defend
 
 *252
 
 ant and the officer were both leaning over the motorcycle; he conld not then see the gun, but a moving of the defendant’s hands towards the policeman, and heard the defendant say to the officer: “Stick them up — I’ll kill you.” He then heard a shot fired and saw the officer crunch to the ground. He ran over at once, caught the officer in his arms as he fell, and placed his head upon his knee. From this position the officer fired five shots at the fleeing defendant from Freeman’s pistol. The peculiar circumstance in the entire transaction is that, while the officer possessed a gun, no shot was fired from that gun, but every shot was fired from the pistol of the defendant that somehow had been secured by the officer.
 

 The defendant gave testimony tending to prove that the officer searched the car, obtained the defendant’s gun, and ordered him out of the car; that when he got out the officer presented this gun to his body, and that he, the defendant, in order to protect' himself from death and great bodily injury, attempted to grasp his pistol in the hands of the officer, and that in a scuffle, the gun was accidentally discharged. The testimony of the defendant, if believed, would tend to show that he did not kill the officer “purposely and wilfully,” as defined in the statute, but that if any killing was done by him it was done accidentally and unintentionally in this scuffle. Even under the defendant’s testimony, the transaction as related by bim might support the conclusion, that, although unintentional, the homicide was caused while resisting arrest. .
 

 Whether the state’s theory of the killing, or the defendant’s, was true was a question for the jury.
 
 *253
 
 Was the defendant entitled to have the court charge upon a lesser degree than murder in the first degree under the state of proof offered by him?
 

 Counsel for defendant, before argument, requested a specific charge that, under the evidence, he might be found guilty of a lesser degree of murder than the degree charged in the indictment. This the court did not do; it charged the jury that they should find him guilty of murder in the first degree or acquit.
 

 The court said, after charging on the elements of first degree murder:
 

 “On the other hand, members of the jury, if you do not find him guilty of murder in the first degree, either with or without a recommendation of mercy, then your duty would be to acquit the defendant in this case.”
 

 At the close of the general charge, counsel for the defendant excepted to the failure of the court to charge on a lesser degree than murder in the first degree. In its general charge with reference to murder in the first degree the court plainly indicated that Freeman must be found guilty of murder in the first degree whether the pistol was or was not intentionally discharged. The court indicated the jury might so convict by charging, “Whether the trigger was pulled by Officer Horn or by Roy Freeman makes no difference, if you find from the evidence in the case that the gun was discharged while Roy Freeman was resisting arrest. ’ ’
 

 If the killing was unintentional and not “purposely or wilfully” done, if the trigger was pulled by Officer Horn without any causal intention on the part of the defendant, it would not have been murder in the first degree; but if the killing was done
 
 *254
 
 under such circumstances, and the jury believed it was so done, and was not done in lawful self defense, the offense charged might be reduced to manslaughter for the killing of an officer while resisting arrest. When different degrees are included in the offense charged, the jury may find the defendant guilty of an inferior degree included in the offense (Section 13692, General Code); and if the evidence tends to support such inferior degree, the court should charge concerning it. True it is that the jury .may have disbelieved the defendant, since the manner of killing was circumstantial. It might have found that in fact the pistol that the officer had on the running board of the car was his own, and had in the meantime been returned to the officer’s pocket; that the pistol that was actually fired was the defendant’s pistol, fired by him after he came out of the car and confronted the officer; • and that after the firing of the gun by defendant and in the scuffle, the officer may have wrested^ the pistol from Freeman and fired after him in his retreat. However, the court should have charged the defendant’s theory of the case. The rule has often been established by this court that where the evidence justifies it, the lesser degrees of an included offense must be charged; if there is no evidence tending to prove the lesser degree, the court need not charge in that respect.
 

 The later cases in this court announcing this principle are
 
 Bandy
 
 v.
 
 State,
 
 102 Ohio St., 384, 131 N. E., 499, 21 A. L. R., 594, and
 
 Windle
 
 v.
 
 State,
 
 102 Ohio St., 439, 132 N. E., 22. In
 
 People
 
 v.
 
 Koerber,
 
 244 N. Y., 147, 155 N. E., 79, the Court of Appeals held:
 

 “Refusal, in felony murder, to instruct jury as to
 
 *255
 
 lower degrees of homicide, and giving instruction to convict for murder in first degree or to acquit, is proper only where no possible view of facts would justify any other verdict, except a conviction of the crime charged or an acquittal.”
 

 See, also,
 
 People
 
 v. Moran, 246 N. Y., 100, 158 N. E., 35.
 

 In the course of its general charge the court said to the jury:
 

 “It was not William C. Horn so much with which we are concerned in this case. * * * The shot that shoots down an officer reverberates with the echoes of anarchy, and the flame that comes from the firing of that pistol gives suggestion of chaos,” etc.
 

 Bearing in mind that it was claimed by the defendant that whatever he did was done in self-defense, and that the pistol was, in any event, unintentionally and accidentally discharged, this comment of the court was prejudicial, and, coming from the bench as it did, was calculated to inflame and prejudice the minds of the jury. Besides, the comment contained an implication that this particular shot that shot down this officer fell within.the condemnation of the court and was such a shot that “reverberates with the echoes of anarchy and * * # gives suggestion of chaos.” 'Certainly we all agree that an intentional criminal act in shooting down one of our public .officers is a crime against the government; so to a lesser degree is the shooting down of any citizen; but what we may think or say as individuals may not be permitted in the trial of a criminal case where the charge of the court should be confined to the questions of law and fact presented on the trial. Coming from the bench, at the close of the trial, re
 
 *256
 
 marks of this character were extremely prejudicial, especially so in a case where “purpose or wilfulness” and intentional killing were in issue.
 

 The judgments of the lower courts are reversed and the cause remanded to the trial court for a new trial, or for further proceedings according to law.
 

 Judgment reversed and cause remanded.
 

 Allen, Kinkade, Robinson and Matthias, JJ., concur.