**STATE, Plaintiff-Appellee, v. BEDNARIK, Defendant-Appellant.**

Ohio Appeals, Seventh District, Mahoning County.

No. 3463.   Decided December 20, 1954.

50

William A. Ambrose, Mahoning County Prosecutor, H. H. Hull, Asst. County Prosecutor, Youngstown, for plaintiff-appellee.

Herbert, Tuttle, Applegate & Britt, Columbus, for defendant-appellant.

(HURD, PJ, KOVACHY, J, SKEEL, J, of the 8th District sitting by designation.)

## OPINION

By SKEEL, J:

This cause is now before this Court on a motion of the defendant, Bednarik, for leave to appeal his cause to this court on questions of law from a verdict and judgment of guilty entered by the Common Pleas Court of Mahoning County after trial on a charge of murder in the first degree. The jury trying the cause recommended mercy and the defendant is now confined in the penitentiary under a life sentence.

The jury returned its verdict on March 18, 1947. No appeal was taken from the judgment and sentence within the time provided by §2953.05 R. C., but since that time this defendant has, without the aid of counsel, filed applications for leave to appeal, all of which have been overruled.

The "Petition for Leave to Appeal" now before the Court was filed January 22, 1954. The defendant bases his right to have his conviction reviewed on a claimed violation of "Due Process of Law" in depriving him of his liberty in the following particulars:

1. . . . That the convicting court erred in admitting as properly obtained evidence an illegally obtained and concealed confession to murder in the first degree.

2. . . . that a prompt hearing and legal counsel was denied the petitioner at the time of his arrest.

3. . . . that the convicting court erred in its appointment of incompetent counsel for petitioner's defense.

4. . . . that the verdict was manifestly against the weight of the evidence and contrary to law.

In addition to the foregoing claims, the defendant upon hearing, with the aid of counsel, presented the question of the refusal of the court to instruct the jury on the included offenses of murder in the second degree and manslaughter and also the refusal to furnish the jury with forms of verdict agreeable to such included offenses.

The record before us, by agreement of counsel, consists of a complete transcript of the evidence, the exhibits and the charge of the court, as well as a transcript of the docket entries.

The charge against the defendant and one John Anthony Pruce (they being jointly indicted) is that he purposely killed John Dalton while perpetrating or attempting to perpetrate a robbery.

The evidence discloses in part that on the night or early evening (6:30 to 7:30 P. M.) of November 30, 1947, he had been drinking with his co-defendant with or at the place of a woman named Goldie Sabor. They left her place or company and drove in Pruce's automobile to "Surack's" (where beer and wine was dispensed either by the drink or in the bottles for use away from the premises) to buy a bottle of wine. This defendant went in to make the purchase and while there saw the deceased, as this defendant described it, "celebrating again". According to the defendant it was suggested a short time later, after they had driven away from "Surack's" place, that they take the deceased home, but on returning to the cafe to get him they found he was not there. The defendants testified that they then decided to go to the home of the deceased to finish off the bottle of wine which by that time had been partly consumed, and did in fact go there for that purpose. The deceased's home was in an old street car with a shed attached. It was the State's claim that before going to decedent's home, they entered into a conspiracy to rob the deceased while he was walking home, but because he had reached home before they could carry out such unlawful purpose they entered his home to complete such unlawful conspiracy. The evidence which supports this claim is contained in the alleged signed confessions of the defendants. The evidence of the defendants further tends to show that when the defendants knocked at deceased's door they were admitted by the deceased and that thereafter they, with the deceased, proceeded to drink from a common glass the wine brought in by the defendants. Thereafter more wine was needed and the deceased contributed money toward its purchase. Both defendants testified that some discussion took place as to how much money deceased had and after putting his bankbooks on the table he reached for a box back of his bed and took out a gun. Defendants then testified that Pruce grabbed for the gun and took it away from Dalton and that "John (Pruce) mentioned to him, why did you want to do that John, we are here drinking together, all we did was ask you if you wanted to buy another bottle of wine * * *". The evidence then discloses that this defendant slapped the deceased a few times and then wiped the blood from his face. He then testified that he went outside for a minute or two

for a personal matter and as he was returning he heard a shot. He then testified:

". . .I ask John, 'Jesus Christ, what happened?'

And he said, 'Honest to God, Joe, I didn't mean it, he tried to grab the gun away from me; * * *.' "

The defendant, Pruce, testified after telling how he took the gun away from Dalton, as follows:

"Well, at that time, as I was saying, Joe was out, he (Dalton) wanted his gun back and I wouldn't give it back and he jerked for the gun and it happened so fast that all I remember, he grabbed the gun and grabbed part of my hand with both of his hands, part of the gun and I, by instinct, my other hand followed up the way he grabbed. I tried to grab and the way I pulled it back Mr. Dalton fell backwards and I heard a shot and I fell this way, the way I jerked to get the gun back. I fell down toward the other end of the bed * * *." "Well, I looked at him; Joe happened to be coming right in. Joe was in the doorway, I believe, when the shot went off, and I say, 'O, my God, Mr. Dalton;' Joe said, 'I guess he is shot or something like,' I called out his name too in that manner."

Neither defendant deviated from this account of the shooting under cross-examination and the alleged confessions which defendant claims not to have been correctly transcribed and unlawfully induced, gives no help to the State's case on its claim of a "purposeful" killing as alleged in the indictment.

It should also be noted that the only suggestions that the defendant's reason for going to Dalton's home was to rob him, is contained in the alleged confessions. Both defendants deny making any such statements and the said confessions in describing what occurred when the shot was discharged that killed Dalton gives little or no support to the State's claim that a robbery was in progress or being attempted.

The court's charge on the elements of the crime was as follows:

"This indictment is based upon the sections of our law which in part reads; 'Whoever purposely and either of deliberate and premeditated malice or in perpetrating or attempting to perpretate a robbery, kills another is guilty of murder in the first degree.' The defendants here are not charged with first degree murder by purposely and of deliberate and premeditated malice killing John Dalton. They. and each of them, are charged in this indictment with first degree murder by purposely killing John Dalton while attempting to perpetrate a robbery. Deliberate and premeditated malice in the killing are not elements of the crime charged in this indictment. In the case of homicide which occurs in the perpetration or attempt to perpetrate any rape, arson, robbery or burglary, the enormity and turpitude of the criminal act in which the offender is engaged at the time supplies the place of the deliberate and premeditated malice, made an element of the first class of homicide defined by the statute as first degree murder.

There are, in the class of homicide charged here, two major elements which are inseparable and essential to the crime of purposely killing John Dalton while attempting to perpetrate a robbery; they are, first, that the deceased John Dalton was purposely killed, and second,

that he was killed during an attempt to perpetrate a robbery. Neither of these elements standing alone will support the charge of murder in the first degree. In this case the burden is on the state to prove both these elements beyond a reasonable doubt. They are charged with purposely killing John Dalton in the attempt to perpetrate a robbery."

At the conclusion of the charge, counsel for both defendants requested that the court include in its instructions a charge on second degree murder, manslaughter and assault and battery, and to furnish verdicts "covering these crimes". This request was refused by the court and the case submitted to the jury on the crime charged in the indictment without submitting the included offenses.

This action of the court in refusing to charge on the defendants' theory of the case, there being evidence to support such claim, deprived this defendant of substantial rights to which he was clearly entitled under the law of this State.

The Supreme Court, in the case of **Freeman v. Stone, 119 Oh St 250,** had the identical question for consideration. The defendant was charged with murder in the first degree in purposely killing a police officer while acting in the discharge of his duty under the provisions of §2901.04 **R. C.** The defendant's theory of the death was that the shot which killed the officer was discharged by accident. The court refused to charge on the included offenses. In reversing the trial court, the Supreme Court said:

"1. Where a defendant is indicted and tried for 'purposely and wilfully' killing an officer under §12402-1 GC, and he offers testimony tending to prove that the killing was not done purposely or wilfully, but in a scuffle and unintentionally, it is the duty of the court to charge a lesser degree than murder in the first degree; if such testimony tends to prove that such killing, although unintentional, was caused by the defendant while resisting arrest, the court should charge the degree of manslaughter."

This case was followed in the cases of: **Glassock v. State, 125 Oh St 75, Malone v. State, 130 Oh St 443** at page 449.

In the case of **State v. Cochrane, 151 Oh St 128,** the Supreme court said in the second paragraph of the syllabus, in dealing with this subject:

"If, in the trial on an indictment for murder it is possible under the evidence to acquit the defendant of murder in the first degree, of murder in the second degree, and of manslaughter because the evidence fails to establish beyond a reasonable doubt a causal connection between the criminal agency and the cause of death, or because the evidence fails to establish any other esential element of such offenses, it is competent for the jury where the evidence warrants it, to find the defendant guilty of assault and battery only, and under such circumstances it is error to the prejudice of the defendant to refuse a request to charge on the lesser offense of assault and battery."

And again at page 131 the court said:

"In the case of **Marts v. State 26 Oh St 162,** this court held:

'4. On the trial of an indictment for murder it is competent for the jury, where the evidence justifies it, to find the defendant guilty of an

assault and battery only, and it is error to the prejudice of the defendant to instruct the jury otherwise.' Again in the case of **Windle v. State, 102 Oh St 439, 132 N. E. 22**, this court held:

'An indictment charging, in separate counts, shooting with intent to kill, and shooting with intent to wound, includes the lesser offenses of assault and battery, and assault, and where, upon trial, the evidence tends to support such lesser offense or offenses, it is the duty of the court to charge the jury with reference to such lesser offense or offenses (**State v. McCoy 88 Oh St 447**, modified).' See, also, **Freeman v. State, 119 Oh St 250, 163 N. E. 202**. In the opinion of this court, the refusal of the trial court to charge on the subject of assault and battery was prejudicial error."

The duty of the court to charge on the question of an accidental discharge of a firearm thereby causing death, or the conduct of the deceased being the proximate cause of its discharge, is here presented. The defendant, Pruce, testified that he took the gun away from the deceased in self-defense, which he would have had a lawful right to do if he was acting in fear of death or great bodily harm and was himself not the aggressor and not engaged in unlawful conduct toward the deceased. It is his version of the killing that the deceased caused the gun to be discharged in struggling to retake possession of it. This question as well as the law applicable to the included offenses of murder in the second degree and manslaughter should have been submitted to the consideration of the jury.

It remains to consider the question of the duty of this court in passing on the defendant's application for leave to appeal.

In the case of **State ex v. Todaro, 92 Oh Ap 247**, the right to appeal was requested because the appellant (who had been found guilty of contributing to the delinquency of a minor) claimed that:

1. The affidavit did not charge an offense.

2. No proof that offense was committed in Ottawa County.

3. Verdict against weight of the evidence.

The court said on page 284:

"Under the circumstances the application for leave to appeal does not appear to be frivolous or a sham and we find good cause shown and the application is allowed."

The syllabus of the case provides:

"Upon a motion for leave to appeal from a sentence imposed by the Juvenile Court, good cause is shown as that term is employed in §1839-51 GC, when a substantial question relating to the trial, conviction and sentence of the defendant is raised incident to the appeal."

Also, in the case of **State v. McGahan, 86 Oh Ap 283**, the second and third paragraphs of the syllabus provide:

"2. In determining whether leave to appeal shall be granted or refused, the court is required to exercise sound discretion.

3. Leave to appeal should be granted only where a refusal of such leave might result in a miscarriage of justice."

The failure of the court in the instant case to charge on the included offenses of murder in the second degree and manslaughter where the evidence was such as to require such instructions be given is a

circumstance which demands that the defendant be permitted to have his case reviewed in this court for the reason that the "refusal of such leave might result in a miscarriage of justice."

The defendant is therefore granted leave to appeal under the provisions of §2953.05 R. C., and may file his bill of exceptions within thirty days from the date of the journalization of this order under the provisions of §2945.65 R. C.

The County Prosecutor has, by brief, presented the question of the failure of the defendant to file a notice of appeal in the trial court and a copy thereof in the Court of Appeals with the filing of his ("Petition") —Motion for Leave to Appeal, here being considered.

Under the provisions of §2953.05 R. C. the filing of such notice was a necessary procedural step in seeking leave to appeal. **State v. Nickles, 159 Oh St 353.** The defendant failed to file such notice, or notice to the prosecutor at the time he filed his motion for leave to appeal. Since counsel cannot agree on a stipulation to correct the record, this court grants defendant leave to amend his motion for leave to appeal by complying with §§2953.05 and 2953.06 R. C., and when completed then the order herein provided for may be journalized.

HURD, PJ, KOVACHY, J, concur.