THE STATE OF OHIO, APPELLEE, *v.* BUTLER, APPELLANT.
THE STATE OF OHIO, APPELLEE, *v.* ANDERSON, APPELLANT.

(Nos. 3173 and 3177—Decided June 1, 1966.)

Mr. *Norman J. Putman,* prosecuting attorney, and *Mr. David D. Dowd, Jr.,* for appellee.
Mr. *Vincent J. Bernabei,* for appellant in case No. 3173.
Mr. *Harry W. Schmuck,* for appellant in case No. 3177.

RUTHERFORD, P. J. An automobile collision, at approximately 10:30 p. m. on State Route 44 in Stark County, Ohio, resulted in the instant death of Philip Romano. Thereafter, Jerry Anderson, age 29, and Harold Butler, age 22, were jointly indicted by the Stark County Grand Jury. The indictment, which charged murder in the second degree, alleged:

"* * * that Harold Butler and Jerry Anderson * * * did purposely and maliciously kill Philip Romano * * *."

A bill of particulars filed by the prosecuting attorney further alleged:

"1. That on or about May 8, 1964, at approximately 10:30 p. m. eastern daylight saving time in Stark County, Ohio, and on or near a certain highway known as State Route 44 at a point on said highway approximately 1.1 mile south of the

Portage County line, Jerry Anderson and Harold Butler purposely and maliciously killed Philip Romano by operating their respective motor vehicles in such a way that the motor vehicle operated by Jerry Anderson struck a motor vehicle in which Philip Romano was located with such force and violence as to cause the death of Philip Romano;

"2. That Harold Butler used a 1962 Chevrolet and Jerry Anderson a 1959 Ford in this killing;

"3. That Harold Butler aided, abetted or procured Jerry Anderson in killing Philip Romano;

"4. That Jerry Anderson aided, abetted or procured Harold Butler in killing Philip Romano."

Upon arraignment, Harold Butler and Jerry Anderson each entered a plea of "not guilty."

The defendants were separately tried. Three forms of verdict were submitted to each jury, to wit:

1. Guilty of murder in the second degree.

2. Not guilty of murder in the second degree, but guilty of manslaughter in the first degree.

3. Not guilty.

In each case, the jury returned a verdict of guilty of murder in the second degree. The defendants were, respectively, sentenced to life terms in the Ohio State Penitentiary, and these appeals followed

Upon the trial of each case, the state presented evidence that while at a tavern Anderson and Butler were each extolling the merits of his car and that pursuant to an agreement to contest the merits of their separate cars Anderson and Butler got into their cars and headed north on State Route 44 in Stark County. The evidence is not clear as to how many times each had passed the other. Just prior to the collision, Anderson attempted to pass Butler, and another car came from the north over a small crest in the road. Mr. and Mrs. Storey and Mrs. Lowden, driver and passengers of the oncoming automobile, testified that the headlights of the Anderson and Butler cars were side by side and that the Storey car was forced off of its right side of the road to avoid being struck. However, Anderson testified that he pulled back in behind Butler and then started around Butler again. Another car (the one driven by the decedent, Philip Romano) then came south over the crest

and Anderson, whose car was abreast of Butler's car, could not get over and the head-on collision occurred in the south-bound lane, which caused the death of Philip Romano.

Route 44 is a two-lane highway consisting of one north-bound and one south-bound lane. There was a white center line on Route 44, but no yellow line.

The 1963 Cadillac driven by Philip Romano left 34 feet of skid marks in the south-bound lane and 25 feet of gouge marks to where it came to rest off the right side of the south-bound lane. The speedometer was jammed at 50 miles an hour. The 1959 Ford being driven by Jerry Anderson left 181 feet of gouge marks from the south-bound lane to a point where it left the right side of the road headed north and an additional 63 feet of marks to a point where it came to rest 20 feet off the right side of the road. The Ford's speedometer was jammed at 90 miles an hour.

The 1962 Chevrolet driven by Harold Butler continued down the road until Butler could find a place to turn around with his car which had no workable low gear or reverse. He then returned to the scene.

Anderson denied that there had been any discussion or agreement with Butler to contest or race; that there was any contest or race; that there was any concert of effort or agreement on the part of he and Butler; or that he had any intent to kill anyone.

It is Butler's contention that he had nothing to do with the accident; that he was not engaged in a contest or race with Anderson; that he had not engaged in any discussion or agreement to race with Anderson; that there was no agreement or concert of effort on the part of he and Anderson; and that he did not kill anyone and had no intent to kill anyone.

We will consider first the respectively assigned errors that the evidence was insufficient to support verdicts of guilty of murder in the second degree and that the verdicts were against the manifest weight of the evidence.

Two essential elements necessary to sustain a conviction of murder in the second degree are:

(1) An intent and purpose to kill, and
(2) Malice.

One may be presumed to intend the natural, reasonable and

probable consequence of his voluntary acts, unless the circumstances are such as to indicate the absence of such intent. One may not be presumed to intend results which are not the natural, reasonable and probable consequences of his act.

While neither Anderson nor Butler knew Philip Romano and, therefore, could have no motive to kill directed specifically at him; nevertheless, there is evidence in the record from which a jury could find beyond reasonable doubt that pursuant to an agreement Anderson and Butler were operating their cars with such reckless, willful and intentional violation of traffic laws of the state of Ohio that the natural and probable consequence of their voluntary acts would be to produce death. From such conduct and under such circumstances an intent and purpose to kill may be presumed, if the jury after consideration of all the evidence so find beyond reasonable doubt. If a defendant has an intent to kill someone, it is not necessary that he have in mind the particular person whose death results.

Where the fact of killing, with intent and purpose to kill, is proved, malice is to be presumed, and all the circumstances of justification, excuse or extenuation must be made out by the accused, unless they appear from the evidence adduced against him. See *State* v. *Robinson*, 161 Ohio St 213; *Davis* v. *State*, 25 Ohio St. 369; and *State* v. *Stallings*, 82 Ohio App. 337.

It is our finding that there is credible evidence in the record in each case to sustain the charge of second degree murder if the jury believed the testimony of various witnesses. Also, there is evidence, dependant upon the weight given it by the jury, that Philip Romano died at most as a result of violation of traffic laws. If the jury believed this version or had a reasonable doubt as to whether the defendants or either of them purposely and maliciously killed Philip Romano, then it is evident that lesser included offenses remained for the jury to consider.

We also find sufficient evidence to present a jury question upon whether Harold Butler was an aider, abettor or procurer within the terms of Section 1.17, Revised Code, and therefore subject to prosecution and punishment as if he were the principal offender.

In neither case do we find any error in the court's refusal to direct a verdict in favor of the defendant upon the charge of

murder in the second degree, nor do we find the verdict to be against the manfiest weight of the evidence.

Factually, these cases are almost identical to those of *State v. Patterson* and *State v. Bradley*, which were tried in Stark County in 1959.

In the *Patterson case*, there was testimony that Patterson and Bradley had been in a tavern where they engaged in a discussion of the relative speeds of their automobiles; and, also, that they entered into an agreement pursuant to which they entered into a contest with their cars. At approximately 11 p. m. they were traveling at excessive speeds on a four-lane highway (two lanes in each direction divided by a center line).

Shortly before the fatal collision, Bradley attempted to pass Patterson. One of the cars crossed the center line far enough to force a car coming in the opposite direction against the curb on its right. Shortly thereafter, Bradley, in passing Patterson, lost control of his car and collided with a car ahead, which car had given a left-turn signal and reduced its speed in the lane next to the center line preparatory to making a left turn. The collision killed three people in the car struck by Bradley, and Patterson's car collided with Bradley's car. There was evidence that both Patterson and Bradley were travelling at high and excessive rates of speed.

Both were indicted on charges of murder in the second degree. Patterson was tried before a jury. Upon appeal to this court, it was held that the evidence was sufficient to present a jury issue upon the questions of intent and purpose to kill and malice and to sustain the verdict of the jury finding Patterson guilty of murder in the second degree. However, it was determined that the trial court committed error prejudicial to the defendant by failure to instruct the jury upon manslaughter in the first degree and also upon manslaughter in the second degree as lesser included offenses, which error was held to be prejudicial to the defendant; and a new trial was ordered. The Supreme Court, in *State v. Patterson*, 172 Ohio St. 319, reversed this court by holding, as set forth in the second paragraph of the syllabus, that:

"Even though facts in such case may warrant instructions to the jury on lesser included offenses, the refusal to so instruct is tantamount to a directed verdict of not guilty of all of the

lesser included offenses, inures to the defendant's benefit and is not prejudicial to him."

In the opinion, the Supreme Court said, "It would not have been erroneous to have charged upon manslaughter in the first degree as a lesser included offense." However, no reference was made as to whether it would have been either proper or erroneous to have charged upon manslaughter in the second degree as a lesser included offense.

Without discussion of the issue or assigned error raised by the cross-appeal of the defendant that the evidence was insufficient to support a verdict finding the defendant guilty of murder in the second degree, the Supreme Court then said, "No other assigned errors are prejudicial," and the cause was remanded to the Common Pleas Court for reimposition of sentence.

In support of our finding that the facts in the instant cases are sufficient to support a verdict of the jury finding the defendant guilty of murder in the second degree, we find no better authority than the holding of our own court with respect to analogous facts in the *Patterson case,* which, upon this issue, was affirmed by the Ohio Supreme Court in *State* v. *Patterson,* 172 Ohio St. 319, otherwise the Supreme Court could not have ordered sentence reimposed as it did.

Following the trial of Patterson, Bradley who had been jointly indicted with Patterson on charges of murder in the second degree, was separately brought to trial before another Judge of the Common Pleas Court of Stark County and before a jury. At the end of the state's case, the court sustained Bradley's motion to dismiss the second degree murder charge and accepted a plea of guilty to manslaughter in the second degree.

Prior to the trials of Anderson and Butler, from which the instant appeals were taken, Butler was previously brought to trial. The court followed the rule of the *Patterson case, supra.* The jury was not given the opportunity to return a verdict of guilty of a lesser included offense even should they find from the evidence and under the law that Butler was guilty of such a lesser included offense but not guilty of murder in the second degree; and the result was dismissal of a hung jury.

Thereafter, on April 7, 1965, and before trial of Anderson

and retrial of Butler, from which cases the instant appeals result, the Supreme Court decided the case of *State* v. *Loudermill*, 2 Ohio St. 2d 79, the syllabus of which case holds:

"Where the evidence in a criminal case would support a finding by the jury of guilt of a lesser offense included in the offense for which defendant was indicted and tried, the refusal of the trial court to charge upon that lesser included offense is error prejudicial to the rights of the defendant. (Paragraph two of the syllabus of *State* v. *Patterson*, 172 Ohio St. 319, overruled; *Freeman* v. *State*, 119 Ohio St. 250, and *State* v. *Muskus*, 158 Ohio St. 276, approved and followed.)"

That restores the law of Ohio to the position originally taken by this court in the *Patterson case*, that, since the evidence would have supported a finding by the jury of lesser offense included in the offense for which the defendant was indicted and tried, the refusal of the trial court to charge upon such lesser included offense or offenses was error prejudicial to the rights of the defendant.

However, the *Loudermill case, supra*, does not answer all the questions now before us. In each of the instant cases the trial court charged upon the offense of murder in the second degree and upon manslaughter in the first degree as a lesser included offense but did not charge upon manslaughter in the second degree as a lesser included offense. In the case of Anderson, a request for an instruction upon manslaughter in the second degree as a lesser included offense was specifically made by the defendant and refused by the court.

This brings us to the specific issue of whether, under the evidence in these cases, manslaughter in the second degree was a lesser included offense upon which the defendants were entitled to have the jury instructed and verdict forms submitted.

Rather than discuss both manslaughter in the first degree and manslaughter in the second degree as lesser included offenses, we will limit our discussion to manslaughter in the second degree as a lesser included offense, because of the statement of the Supreme Court in the opinion of the *Patterson case* that an instruction upon manslaughter in the first degree under analogous evidence would not have been error. We will limit our consideration to the question of whether, under the charge and the evidence, manslaughter in the second degree was a lesser

included offense upon which the jury should have been instructed.

As stated in the original opinion of Judges McLaughlin and Putnam in the *Patterson case*, No. 2887, Court of Appeals, Stark County, it is our finding, as determined from the Ohio statutes, that there are four degrees of homicide, to wit, murder in the first degree, murder in the second degree, manslaughter in the first degree and manslaughter in the second degree, and that dependant upon the facts each of the lesser may be included in the greater.

In *Bandy* v. *State*, 102 Ohio St. 384, the Supreme Court, in paragraph one of the syllabus, held:

"Murder in the first degree, literally considered, necessarily includes murder in the second degree and manslaughter. Whether in an indictment for murder in the first degree in the perpetration of a robbery, a charge is warranted as to murder in the second degree, or manslaughter, depends, however, not merely upon whether or not these are literally included in the formal charge, but upon whether or not there is any evidence tending to support a charge of murder in the second degree, or manslaughter."

Section 2901.06, Revised Code, provides:

"No person shall unlawfully kill another. Whoever violates this section, except in the manner described in Sections 2901.01 to 2901.05, inclusive, of the Revised Code, is guilty of manslaughter in the first degree, and shall be imprisoned not less than one nor more than twenty years."

Since the decision in *Bandy* v. *State*, 102 Ohio St. 384, and with the advent of automobiles, the Legislature has seen fit to provide for two separate degrees of manslaughter, as shown by the passage of an additional manslaughter statute, Section 4511.18, Revised Code, which provides:

"No person shall unlawfully and unintentionally kill another while violating any law of this state applying to the use or regulation of traffic. Any person violating this section is guilty of manslaughter in the second degree."

Section 4511.99, Revised Code, provides:

"(A) Whoever violates Section 4511.18 of the Revised Code shall be fined not more than five hundred dollars or imprisoned in the county jail or workhouse not less than thirty days nor

more than six months, or both, or imprisoned in the penitentiary not less than one nor more than twenty years."

In support of his contention that manslaughter in the second degree is not an offense of lesser degree included within the offense of murder in the second degree, the prosecuting attorney cites the case of *State* v. *Whitten*, 82 Ohio St. 174, which holds that larceny is not a lesser included offense under an indictment for pocket-picking. The distinction is clear. As set forth in the opinion, and in *Harris* v. *State*, 57 Ohio St. 92, 94, pocket-picking under our statutes is an offense against the person, while larceny is an offense against property. Thus pocket-picking and larceny are not offenses of the same general character but are distinct and independent offenses of different classes.

One charged with pocket-picking and convicted or acquitted cannot thereafter claim double jeopardy if charged with the distinct and independent offense of larceny. If manslaughter in the second degree is a distinct and independent offense not included in the offense of murder in the second degree, it would likewise be true that one tried and either convicted or acquitted of murder in the second degree could thereafter be separately tried and convicted of manslaughter in the second degree for a death arising from the same single act. We cannot agree that this would be the case. Murder in the second degree and manslaughter in the second degree are of the same general character, to wit, felonious homicide, and it is our finding that they are not distinct and independent offenses; therefore, if a defendant is convicted or acquitted of a charge of murder in the second degree he cannot thereafter be tried upon a charge of manslaughter in the second degree arising from the same acts, for the reason that the latter was a lesser included offense within the former.

In *Bandy* v. *State*, 102 Ohio St. 384, The Supreme Court held that whether, in a charge for murder in the first degree, a charge is warranted as to a lesser included offense depends not merely upon whether the lesser included offenses are literally included in the formal charge, but upon whether there is any evidence tending to support a charge of the lesser included offense.

Having first decided that manslaughter in the second de-

gree is a lesser included offense literally included in the formal charge of murder in the second degree, we come to the next question, to wit, Was there evidence in the instant cases tending to support a charge of the lesser included offense of manslaughter in the second degree?

As we have hereinbefore set forth, a jury question was presented in each case as to whether there was an intentional killing. There is ample evidence for the jury to find that there were violations of the law of this state applying to the use or regulation of traffic, which were unlawful acts and which were the proximate cause of the death of Philip Romano. Should the jury fail to find beyond reasonable doubt the additional element of an intentional killing, then, the killing being unintentional, Section 4511.18, Revised Code, has specific application by virtue of its provisions that "No person shall unlawfully and unintentionally kill another while violating any law of this state applying to the use or regulation of traffic." and that, *"Any person violating this section is guilty of manslaughter in the second degree."* (Emphasis added.)

If the jury find the killing to be unintentional, but proximately caused by the violation of any law of this state applying ot the use and regulation of traffic, it thus appears that the Legislature has specifically expressed its intent that the offense be that of manslaughter in the second degree.

We, therefore, find that where defendant is indicted and tried for murder in the second degree, if the evidence raises a jury issue as to whether the killing was intentional or unintentional and the testimony is such that the jury may find beyond reasonable doubt an unlawful and unintentional killing caused by the defendant while violating a law or laws of this state applying to the use or regulation of traffic, the court should charge upon the lesser included offense of manslaughter in the second degree. See *Bandy* v. *State,* 102 Ohio St. 384; *Freeman* v. *State,* 119 Ohio St. 250; *State v. Muskus,* 158 Ohio St. 276.

Further, it is our finding that where a defendant is charged with murder in the second degree but the evidence is such as will support a finding by the jury of guilt of the lesser included offense of manslaughter in the second degree, the failure of the trial court to charge upon the lesser included offense of manslaughter in the second degree is error prejudicial to the

rights of the defendant. See *State v. Loudermill,* 2 Ohio St. 2d 79, wherein on page 80 in the opinion, the Supreme Court, through Schneider, J., said:

"* * * The concept of lesser included offenses is vitalized by statute (Section 2945.74, Revised Code) not by common law.

"The statutory commandments are clear. The evidence, as well as the law, governs the charge of the court in a criminal case (Section 2945.11, Revised Code), and the charge must be consistent with the evidence. It is the *duty of the court to give, as well as that of the jury to consider, a charge on the lesser included offenses which are shown by the evidence to have been committed.*" (Emphasis added.)

We cannot go along with the argument of the prosecuting attorney that by manipulation he can omit allegations of violation of traffic regulations from the indictment and the bill of particulars, and thus, by his act, contrary to the evidence, delete manslaughter in the second degree as a lesser included offense and retain the right to twice prosecute (once for murder in the second degree and again for manslaughter in the second degree) without the defendant being in double jeopardy. In an indictment in the short form as provided for by statute, the specific unlawful act need not be pleaded. The short form of indictment provided for by statute is not in conflict with the constitutional guaranty that the accused shall be advised of "the nature and cause of the accusation against him." See *State v. Schaeffer,* 96 Ohio St. 215, L. R. A. 1918B 945. An indictment sufficient to charge murder in the second degree is sufficient to charge the lesser offenses included therein.

To submit a case to the jury and then to deprive that jury of the choice of verdicts which the law and the evidence in the case require to be submitted to them is a usurpation of the functions of the jury by the court and deprives a defendant of his constitutional rights of due process and trial by jury. As stated in the case of *State v. Loudermill,* 2 Ohio St. 2d 79, the danger which arises, which is of concern not only to the accused but to the state, is that a man guilty of only the lesser crime may be convicted of the higher on insufficient evidence, or of a murderer being acquitted because the state has failed to prove an element of the higher crime.

In the case against Harold Butler, the prosecuting attor-

ncy, over objection, was permitted to cross-examine that defendant at length concerning an incident which happened after the commission of the crime for which he was standing trial. If this testimony was sought to be introduced under the provisions of Section 2945.59, Revised Code, as bearing upon the issue of intent, etc., it was erroneous because the court failed to properly instruct that it was admitted only for such purpose. If it was admitted as evidence relative solely to defendant's character, we find it erroneous and an abuse of discretion to thus permit the state to prove defendant's bad character at a subsequent period. See *Wroe* v. *State*, 20 Ohio St. 460. If the prosecuting attorney's purpose was by cross-examination to bring out matters to lay the foundation for impeaching such answers by later rebuttal testimony to be offered by the prosecution, it was error for the foundation, for such rebuttal testimony cannot be so created upon cross-examination, and the rebuttal testimony thereafter offered was also error. It is our finding that the admission of such testimony in the manner shown by the record constituted error prejudicial to the defendant Butler.

Also it was error prejudicial to the defendant Butler for the prosecuting attorney to quote to the jury in his opening statement inadmissible statements of Bettie Storey, which were made other than in the presence of the defendant Butler.

We find no other error which was prejudicial to either of the respective defendants, but for the reasons herein set forth the judgments are each reversed and each of the causes is remanded to the Common Pleas Court for a new trial and further proceedings according to law.

*Judgments reversed and causes remanded.*

McLaughlin and Van Nostran, JJ., concur.