JOURNAL ENTRY and OPINION
{¶ 1} Mike Jones appeals from a judgment of the common pleas court entered pursuant to a jury verdict which found him guilty of murder with a firearm specification, in connection with his participation in a gang shoot-out during which a stray bullet penetrated the wall of a house and killed a child inside. On appeal, Jones complains of the state's references to his gang affiliation, violation of a discovery rule, failure to inform him of the nature and cause of its accusation, and amendment of his indictment in opening and closing argument. He also claims erroneous jury instructions regarding lesser included offenses, aiding and abetting, transferred intent, and intervening cause. He further maintains the court should have granted his motion for acquittal due to insufficient evidence; complains of ineffective assistance of counsel; and challenges the constitutionality of Ohio's newly amended murder statute. For the reasons given below, we reject these contentions and affirm the judgment of the court. The record reflects that on August 15, 2001, a white Chevrolet carrying several men drove down E. 120th Street and stopped at the intersection of E. 120th Street and Kelton Avenue alongside Hurlon Hill, who was sitting on a bicycle at that intersection. A male from the vehicle asked Hill: "Are you Rockland?" When Hill answered affirmatively, the male said: "Y'all killed my dude." Hill, aware that a Rockland member had killed someone, became concerned that the males in the vehicle were looking to retaliate against Rockland for that killing. He jumped off his bike, yelling "dudes coming", and ran to 11811 Kelton Avenue, a Rockland hangout, alerting Mike Jones, Sundiata Langford, and Jujuan Norman, all of whom were present at that time. The Chevy then drove past 11811 Kelton Avenue, swung around squealing its tires and headed back to the intersection at E. 120th Street, swerving to hit Hill's abandoned bicycle, and continuing north on E. 120th Street. Jones, Langford, and Norman, having each grabbed a gun, began shooting in the direction of the car.
 {¶ 2} Meanwhile, three children, Warren Culbreath, John Knight, Jr., and Rodney Williams, sitting on the porch of Warren's house on East 120th Street, near the Kelton intersection, watched these events. Warren and Rodney walked down the street to get a better view. When LaShante Culbreath, Warren's sister, heard the squeal of car tires and gunshots, she called the boys and they quickly ran inside. A bullet then came through the wall of the home, struck 12-year-old Warren in the back, and lodged in his skull, killing him.
 {¶ 3} A forensic test later showed that the bullet had entered the house from the direction of Kelton Avenue. In addition, the police described the bullet recovered from his body as a 7.62 round of ammunition. They later recovered a 7.62 shell casing from 11815 Kelton Avenue, the property immediately adjacent to 11811.
 {¶ 4} When describing the incident to the police, Jones, Langford, and Norman each admitted firing a weapon from 11811 Kelton in the direction of the white car, but none admitted to using a weapon capable of firing a 7.62 round of ammunition.
 {¶ 5} Thereafter, a grand jury indicted Jones, Norman, and Langford for the murder of Warren, charging that they caused the death of Warren Culbreath as a proximate result of committing or attempting to commit an offense of violence that is a felony of the first or second degree, in violation of Section 2903.02 of the Revised Code. The indictment also included a three year firearm specification for Jones.
 {¶ 6} At their joint trial, Hill testified for the state that the day after the shooting, Jones told him that the guys in the white car fired shots at him, and he, Langford, and Norman fired back.
 {¶ 7} Detective Denise Kovach read a written statement which Jones had given to the police. In this statement, Jones claimed that after Hill came running down the street screaming about the approaching vehicle, he grabbed his gun which had been hidden under some weeds and dirt in the driveway of the house at 11811 Kelton. He stated that two males hanging out of the white vehicle shot at him and Norman, and continued to shoot while the vehicle proceeded to the intersection of E. 120th Street and Kelton. He stated that he had used a .22 pistol, which he disposed of the next day. He also stated that the males in the white vehicle were from the Bloods and the shooting related to retaliation over the death of Maurice Freeman. After the state's case in chief, which included 16 other witnesses, Jones moved for acquittal, but the court denied that motion. The defense presented no witnesses at trial.
 {¶ 8} Following its deliberations, the jury returned verdicts finding Jones, Langford, and Norman guilty of murder and also guilty of the firearm specification. The court subsequently sentenced Jones to a term of incarceration of 15 years to life, consecutive with the three year term on the firearm specification.
 {¶ 9} Jones now separately appeals, raising thirteen assignments of error for our review. His first assignment of error states:
 {¶ 10} "DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN EVIDENCE OF GANG AFFILIATION WAS PRESENTED WITH NO LIMITING INSTRUCTION."
 {¶ 11} Johnson complains that references to his gang affiliation during the prosecutor's opening and closing argument and during testimony by the state's witnesses constituted character evidence and therefore, the court's admission of this evidence without limiting instruction deprived him of a fair trial.
 {¶ 12} We recognize that Evid.R. 404 prohibits the presentation of character evidence to show that a defendant acted in conformity therewith on a particular occasion. However, Evid.R. 404(B) permits the evidence of a defendant's other crimes or wrongs to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 {¶ 13} Furthermore, the admission or exclusion of evidence, including other acts evidence, lies in the trial court's sound discretion. State v. Bey, 85 Ohio St.3d 487, 489-490, 1999-Ohio-283.
 {¶ 14} Here, our review of the record shows that the evidence regarding the gang affiliation had been introduced to establish motive, specifically, that Jones and his codefendants caused Warren's death as a result of a gang-related shooting. As such, the gang references are permitted under Evid.R. 404(B). Therefore, the court did not abuse its discretion in admitting this evidence or allowing the prosecutor to allude to it in his opening and closing argument. This assignment of error lacks merit.
 {¶ 15} The second assignment of error states:
 {¶ 16} "DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN COUNSEL WAS NOT FURNISHED WITH SUMMARIES OF DEFENDANT'S ORAL STATEMENTS."
 {¶ 17} Jones complains that the state did not provide him with a summary of his oral statement he made to the police, a violation of Crim.R. 16.
 {¶ 18} We recognize that Crim.R. 16(B)(1)(a)(ii) requires the state to reduce to writing, in the form of a summary, a defendant's oral statement to a police officer, and to provide the written summary to the defense during discovery.
 {¶ 19} In State v. Penland (1998), 132 Ohio App.3d 176, the court considered a similar claim and set forth the following in its syllabus:
 {¶ 20} "The state violated Crim.R. 16(B)(1)(a)(ii) when it failed to provide to the defense during discovery a written summary of an incriminating oral statement made by the defendant to a police officer. The trial court, however, did not abuse its discretion when it refused to declare a mistrial or to exclude the undisclosed statement, because there was no showing that the discovery violation was willful, that foreknowledge of the evidence would have benefitted the defense, or that the defendant was unfairly prejudiced by the admission of the statement at trial."
 {¶ 21} Here, the transcript reveals that Detective Kovach read Jones' written statement into the record, in which he stated that he took a .22 pistol he had hidden in the driveway of the house at 11811 Kelton after seeing the white vehicle approaching; that he disposed of the gun the next day; and that the shooting related to retaliation over the death of a Blood member. After Detective Kovach finished reading his statement, the prosecutor then asked Kovach if she asked Jones any other questions not reflected on the body of the statement. When defense counsel objected to this line of questioning because the state had not provided the defense with a summary of any additional oral statements, the court conducted a sidebar conference, where the prosecutor informed the court that the only question he intended to elicit from the detective concerned whether Jones had called the police. The court allowed the prosecutor to inquire of Detective Kovach on this issue, having determined it to be an extension of Jones' written statement. The transcript then reflects the following exchange between the prosecutor and Detective Kovach:
 {¶ 22} "Q. I believe my question was: Was there any additional question asked of [Jones] that was not incorporated in the written statement?
 {¶ 23} "A. Yes.
 {¶ 24} "Q. And what question was asked of him?
 {¶ 25} "A. Well, when he was explaining to me what happened and he said they ran to get their guns —
 {¶ 26} "[DEFENSE COUNSEL]: Objection.
 {¶ 27} "THE COURT: Let her finish. Overruled.
 {¶ 28} "A. I said, Why did you go and get your guns, why didn't you call the police instead.
 {¶ 29} "Q. And what was [Jones'] response?
 {¶ 30} "A. He said, no, they would have been gone by the time the police got here. And I said, well, did you want them to be gone or did you want to kill them. And he didn't answer me.
 {¶ 31} "[DEFENSE COUNSEL]: Objection.
 {¶ 32} "THE COURT: That portion will be sustained. The jury is instructed to disregard those comments." (Tr. 1245-1246.)
 {¶ 33} We perceive no abuse of discretion by the court when it considered Jones' oral statement about not calling the police an extension of his disclosed written statement and allowed the state to elicit that from the detective. Furthermore, the record reflects that when Detective Kovach's testimony went beyond the scope of what the court had allowed, the court not only sustained an objection to it but also instructed the jury to disregard it. Accordingly, we reject this assignment of error.
 {¶ 34} Jones' third and fifth assignments of error concern the same issue of law and fact and we address them together. They state, respectively:
 {¶ 35} "DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HE WAS NOT INFORMED AS TO THE NATURE AND CAUSE OF THE ACCUSATION."
 {¶ 36} "DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE INDICTMENT WAS AMENDED BY THE PROSECUTOR DURING THE COURSE OF TRIAL IN HIS OPENING STATEMENTS AND CLOSING ARGUMENT."
 {¶ 37} In his third assignment of error, Johnson complains the state did not specify the underlying felony in his murder indictment, claiming the lack of specificity deprived him of his Sixth Amendment rights to be informed of the nature and cause of the state's accusation; in his fifth assignment of error, Jones argues that the prosecutor, by identifying felonious assault as the underlying felony in the indictment, effectively amended it. The issue for our consideration then concerns whether an indictment for murder must specify the underlying felony.
 {¶ 38} We recognize the requirement that an accused have notice of the offenses charged against him. Sixth Amendment to the United States Constitution; Section 10, Article I of the Ohio Constitution. Furthermore, Crim.R. 7(B), which governs the nature and contents of an indictment, provides, in pertinent part:
 {¶ 39} "(B) NATURE AND CONTENTS. The indictment or the information shall be signed by the prosecuting attorney or signed in his name by an assistant prosecuting attorney, and shall contain a statement that the accused has committed some public offense therein specified. Such statement may be made in ordinary and concise language without any technical averments or any allegations not essential to be proved. It may be in the words of the applicable section of the statute as long as the words of that statute charge an offense, or in any words sufficient to give the accused notice of all the elements of the offense with which he is charged. It may be alleged in a single count that the means by which the defendant committed the offense are unknown or that he committed it by one or more specified means." (Emphasis added.)
 {¶ 40} Moreover, R.C. 2941.14 provides:
 {¶ 41} "(A) In an indictment for aggravated murder, murder, or voluntary or involuntary manslaughter, the manner in which, or the means by which the death was caused need not be set forth."
 {¶ 42} In reviewing a similar issue in the context of involuntary manslaughter, which, as in R.C. 2903.02(B) felony murder, also predicates itself on an underlying offense, the courts have long established that specification of the underlying felony or misdemeanor in an indictment for involuntary manslaughter is not required. See State v. Schaeffer (1917),96 Ohio St. 215, paragraph two of syllabus; Wolf v. State (1869),19 Ohio St. 248, paragraph one of syllabus; State v. Butler (1966),6 Ohio App.2d 193, 204, rev'd on other grounds, 11 Ohio St.2d 23; Statev. Stewart (Oct. 23, 2000), Clinton App. No. CA2000-02-006; State v.Haffey (Sept. 2, 1993), Cuyahoga App. No. 63576; State v. Whitley (Jan. 8, 1987), Ross App. No. 1225.
 {¶ 43} The murder statute, R.C. 2903.02, under which the state charged Jones, provides, in part:
 {¶ 44} "(B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03
or 2903.04 of the Revised Code."
 {¶ 45} Here, the record reflects that Jones' indictment stated that he, on or about August 15, 2001, "unlawfully did cause the death of Warren Culbreath, as a proximate result of the offender committing or attempting to commit an offense of violence that is a felony of the first or second degree, in violation of Section 2903.02 of the Revised Code."
 {¶ 46} Thus, Jones' indictment was stated in the words of the statute, in conformity with Crim.R. 7(B). The lack of particularization of the underlying offense which causes the death is specifically authorized by R.C. 2941.14. Jones does not cite any authority that requires the state to specify the underlying felony in his indictment of murder, and we are aware of none. Applying the case authority regarding involuntary manslaughter, we conclude the state's indictment need not specify the underlying felony. Accordingly, these assignments of error are not well taken.
 {¶ 47} We shall next address the sixth[1] assignment of error:
 {¶ 48} "DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT DID NOT PROPERLY AND FULLY INSTRUCT THE JURY ON AIDING AND ABETTING."
 {¶ 49} Jones complains that the court's instruction on aiding and abetting is deficient because it did not require the jury to find the identity of a principal offender. The court gave the following as its instruction in this regard:
 {¶ 50} "No person acting with the kind of culpability required for the commission of an offense shall aid or abet another while committing the offense. One who aids or abets another in the commission of an offense is as guilty of that offense as the principal offender.
 {¶ 51} "To aid means to help, assist, or strengthen.
 {¶ 52} "To abet means to encourage, counsel, and incite or assist.
 {¶ 53} "Aiding and abetting is when two or more persons have a common purpose to commit a crime and when one does one part and another performs the other part.
 {¶ 54} "The mere fact that a person is present when a criminal fact is committed does not make him an aider and abettor unless he does some overt act.
 {¶ 55} "When two or more persons have a common purpose to commit a crime and one does one part and the second the other, they are acting together. They are equally guilty of that crime.
 {¶ 56} "It must be proven beyond a reasonable doubt that each defendant had in some way participated in or been part of the act in order to be an aider and abettor.
 {¶ 57} "If you find the State proved beyond a reasonable doubt that a defendant was an aider and abettor, then you must find that defendant guilty." (Tr. 1560-1561.)
 {¶ 58} We note that absent a timely objection, a defendant cannot challenge any aspect of the jury instructions on appeal. See State v.Williams (1978), 51 Ohio St.2d 112. In addition, Crim.R. 30(A) provides, in part:
 {¶ 59} "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection."
 {¶ 60} Furthermore, a deficient jury instruction does not constitute plain error unless the outcome of the trial would clearly have been different but for the error. See State v. Campbell (1994),69 Ohio St.3d 38; State v. Moreland (1990), 50 Ohio St.3d 58, 62. In addition, the plain error rule should be applied with the utmost caution and invoked only under exceptional circumstances in order to prevent a manifest miscarriage of justice. See State v. Cooperrider (1983),4 Ohio St.3d 226.
 {¶ 61} In order to convict an offender of complicity, the state need not establish the principal's identity; pursuant to R.C. 2923.03(C), the state need only prove that a principal committed the offense. Statev. Perryman (1976), 49 Ohio St.2d 14, paragraph four of the syllabus, vacated on other grounds, 438 U.S. 911. See, also, State v. Hill (1994),70 Ohio St.3d 25.
 {¶ 62} In this case, the record reflects Jones did not object to the court's instruction on aiding and abetting. We thus review his claim for plain error. In accordance with Perryman, the state need only prove that a principal committed the offense. Here, the state presented evidence to show that all three defendants fired gun shots in the direction of the white vehicle, while one bullet, which some evidence suggested came from the direction of where Jones and his codefendants stood, penetrated the wall of the Culbreath home, and hit and killed Warren Culbreath. Thus, the state's evidence establishes the existence ofa principal who committed the offense which caused Warren's death. Because the law does not require the state to prove the identity of that principal, the court committed no error in its instruction and we do not reach the question of whether the outcome of the trial would have been different had the court so instructed. This assignment of error is overruled.
 {¶ 63} We next discuss the seventh, eighth, and ninth assignments of error together, as they all concern the portion of the jury instruction relating to transferred intent. They state:
 {¶ 64} "DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT AMENDED THE STATUTE AND ALLOWED THE JURY TO CONVICT ON THE JURY'S SENSE OF MORAL OUTRAGE."
 {¶ 65} "DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT INSTRUCTED UPON THE NON-OFFENSE OF TRANSFERRED INTENT."
 {¶ 66} "DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT CONSTRUCTIVELY AMENDED THE INDICTMENT AND THE STATUTE BY INSTRUCTING ON THE DOCTRINE OF TRANSFERRED INTENT."
 {¶ 67} Jones claims that the court's instruction on the doctrine of transferred intent prejudiced him because it "amended the statute" and "constructively amended the indictment," and also because it allowed the jury to convict him "on its sense of moral outrage."
 {¶ 68} The jury instruction Jones complains of is the following:
 {¶ 69} "The doctrine of transferred intent indicates where an individual is attempting to harm one person and as a result accidentally harms another, the intent to harm the first person is transferred to the second person and the individual attempting harm is held criminally liable as if he both intended and did harm the same person.
 {¶ 70} "A person cannot escape the legal and moral responsibility of his or her acts simply because, he, the intended victim, escapes harm while an innocent child is seriously injured." (Tr. 1559-1560.)
 {¶ 71} We note a conviction under R.C. 2903.02(B) requires the proof of an underlying felony, which in the instant case consists of felonious assault, defined in R.C. 2903.11 as:
 {¶ 72} "(A) No person shall knowingly do either of the following:
 {¶ 73} "(1) Cause serious physical harm to another or to another's unborn;
 {¶ 74} "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."
 {¶ 75} The culpable mental state of knowing, required for proof of felonious assault, is defined in R.C. 2901.22 as:
 {¶ 76} "(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 77} Our review of R.C. 2903.02(B) indicates that it is silent as to an offender's mental state in the commission of "causing of death of another." In such case, the applicable culpable mental state is recklessness. See R.C. 2901.21(B). That culpable mental state is defined in R.C. 2901.22 as:
 {¶ 78} "(C) A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."
 {¶ 79} Furthermore, the doctrine of transferred intent indicates that where an individual is attempting to harm one person and as a result accidentally harms another, the intent to harm the first person is transferred to the second person and the individual attempting harm is held criminally liable as if he both intended to harm and did harm the same person. See State v. Mullins (1992), 76 Ohio App.3d 633.
 {¶ 80} In this case, given the evidence adduced at trial showing that Jones and his codefendants intentionally fired shots at the passengers in the white car, the doctrine of transferred intent is an applicable legal theory for the jury's assessment of whether Jones had the requisite mental intent in causing the death of Warren.
 {¶ 81} Thus, the court properly instructed the jury on transferred intent. These assignments of error lack merit.
 {¶ 82} The fourth assignment of error states:
 {¶ 83} "IV. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT WOULD NOT INSTRUCT THE JURY ON ANY LESSER INCLUDED OFFENSE."
 {¶ 84} Jones asserts that the court erred in not instructing the jury on the lesser included offenses of involuntary manslaughter, reckless homicide, and negligent homicide; our review of the record, however, reveals that Jones only requested lesser instructions on reckless homicide and negligent homicide. We thus limit our review to his claim regarding these two offenses.
 {¶ 85} In State v. Deem (1988), 40 Ohio St.3d 205, paragraph three of the syllabus, the court defined a lesser included offense as follows:
 {¶ 86} "An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense."
 {¶ 87} In State v. Kidder (1987), 32 Ohio St.3d 279, the court explained when a lesser included offense should be instructed to the jury, stating:
 {¶ 88} "A criminal defendant is entitled to a lesser included offense instruction, however, only where the evidence warrants it. (Citations omitted.) Thus, the trial court's task is two-fold: first, it must determine what constitutes a lesser included offense of the charged crime; second, it must examine the facts and ascertain whether the jury could reasonably conclude that the evidence supports a conviction for the lesser offense and not the greater."
 {¶ 89} Negligent homicide is defined in R.C. 2903.05 as:
 {¶ 90} "(A) No person shall negligently cause the death of another * * * by means of a deadly weapon or dangerous ordnance as defined in section 2923.11 of the Revised Code."
 {¶ 91} Reckless homicide is defined in R.C. 2903.041 as:
 {¶ 92} "(A) No person shall recklessly cause the death of another * * *."
 {¶ 93} In accordance with the definition set forth in Deem, negligent homicide is not a lesser included offense of murder proscribed in R.C. 2903.02(B). This is because this greater offense can be committed without the lesser offense, negligent homicide, also being committed. Accord State v. Ford (July 10, 2000) Stark App. No. 1999CA00177 (negligent homicide is not a lesser included offense of murder as defined in R.C. 2903.02(B) because one can cause the death of another as a proximate result of committing or attempting to commit the proscribed felony by means other than by a deadly weapon or dangerous ordnance.)
 {¶ 94} Regarding reckless homicide, we recognize it to be a lesser included offense. Here, an element of this murder statute, namely, commission of an underlying first or second degree felony, is not required to prove reckless homicide. However, we conclude an instruction on this lesser offense is nonetheless not warranted, because the jury could not have reasonably concluded that the evidence presented in this case supports a conviction for reckless homicide but not murder under R.C. 2903.02(B). See Kidder, supra. Accordingly, we overrule this assignment of error.
 {¶ 95} The tenth assignment of error states:
 {¶ 96} "DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HE WAS ALLOWED TO BE CONVICTED FOR THE INTERVENING ACT OF ANOTHER."
 {¶ 97} Jones complains that in giving the following instruction on intervening cause, the court effectively amended the statute and the indictment:
 {¶ 98} "The defendants are responsible for the natural consequences of the defendants' unlawful act or failure to act even though the physical harm to Warren Culbreath was also caused by an intervening act or failure to act of another person."
 {¶ 99} Again, because Jones' counsel did not object to the inclusion of this instruction, we review this claim for plain error. We first note that this instruction is a verbatim recitation of the intervening causes instruction in 4 Ohio Jury Instructions (1997), Section 409.56, at 65. We next note that the evidence presented by the state indicates that one bullet alone killed Warren's death. Thus, because only one of the defendants fired the fatal shot, an instruction on intervening cause is not warranted in the instant case.
 {¶ 100} A correct but superfluous jury instruction, however, does not constitute a plain error or a defect under Crim.R. 52(B) unless, but for the error, the outcome of the trial would have been different. On appeal, Jones fails to demonstrate how this superfluous instruction influenced the jury's verdict in any way. As our review of the evidence and the jury instruction in its entirety shows that the jury's verdict was reasonably based upon its application of the law as instructed by the court to evidence presented, we overrule this assignment of error.
 {¶ 101} The eleventh assignment of error states:
 {¶ 102} "DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 103} Jones maintains that deficient counsel performance deprived him of rights to effective assistance of counsel. He claims, in particular, that counsel failed to request a separate trial, failed to file a motion to suppress his statement, failed to request an instruction on accident; and improperly conceded guilt at closing argument.
 {¶ 104} To sustain his claim that his counsel had been ineffective, Jones must demonstrate that trial counsel's performance fell below the objective standard of reasonable competence under the circumstances and there exists a reasonable probability that, but for such deficiency, the outcome of the trial would have been different. SeeStrickland v. Washington (1984), 466 U.S. 668; State v. Bradley (1989),42 Ohio St.3d 136. Furthermore, strategic or tactical decisions made by defense counsel which are well within the range of professionally reasonable judgment need not be analyzed by a reviewing court.Strickland, supra.
 {¶ 105} "We deem it misleading to decide an issue of competency by using, as a measuring rod, only those criteria defined as the best of available practices in the defense field." State v. Clayton (1980),62 Ohio St.2d 45, citing State v. Lytle (1976), 48 Ohio St.2d 391, 396. When counsel had chosen a strategy that proved ineffective, the fact that there was another and better strategy available does not amount to a breach of an essential duty to his client. Clayton, supra.
 {¶ 106} Here, regarding the issue of separate trial, Jones contends that without the introduction of the statements of his co-defendants at the joint trial, he would not have been convicted and therefore he maintains that his counsel should have requested a separate trial.
 {¶ 107} The decision for Jones to be tried with his two codefendants was a tactical decision within the range of professionally reasonable judgment. Even if we consider this strategic decision questionable, the record shows that the state had presented evidence to show that Jones grabbed a gun hidden in the driveway of 11811 Kelton, that gun shots had been fired from the vicinity of 11811 Kelton, that a 7.62 round bullet killed Warren, that police found a 7.62 shell casing in the area around 11815 Kelton, that Jones told Huron Hill that he fired gunshots at the white vehicle, and that the fatal shot came from the direction of Kelton Avenue. As ample evidence existed for the jury to convict Jones even without his co-defendants' statements, we cannot say that but for the failure to request a separate trial, the outcome of the trial would have been different. Regarding his claim that counsel should have filed a motion to suppress his statement on the ground that his statement was the fruit of a warrantless arrest based on an anonymous tip, we recognize that a failure to file a motion to suppress may constitute ineffective assistance of counsel where there is a possibility that the court would have suppressed the evidence. State v. Garrett
(1991), 76 Ohio App.3d 57.
 {¶ 108} Even where a motion to suppress is supported by some evidence in the record, we presume that defense counsel was effective if the defense counsel could reasonably have decided that the filing of a motion to suppress would have been a futile act. State v. Edwards (July 11, 1996), Cuyahoga App. No. 69077, citing State v. Martin (1983),20 Ohio App.3d 172.
 {¶ 109} Here, Detective Kovach's testimony indicates that the police first became aware of the names of the three defendants through a Crime Stopper tip and an anonymous tip the day after the killing. Detective Kovach stated that the police then communicated with individuals acquainted with these men indicating an intent to interview them. She further testified that on August 20, 2001, the POPE unit of the police department picked up these three individuals and brought them to the police station, where they each gave a statement describing the incident. Although she could not recall whether they were handcuffed when they arrived, she testified that the police booked them at the police station only after they gave a statement describing their participation in the incident. Thus the record shows that Jones' arrest was based on information he himself provided to the police, not based on an anonymous tip. As evidence on the record does not justify the filing of a motion to suppress, Jones has not met his burden to prove that his attorney violated an essential duty by failing to file a motion to suppress.
 {¶ 110} Regarding counsel's alleged failure to request an instruction on accident, we note that Jones' claim of self-defense presented at trial is inconsistent with a theory of accident, and we further note that he had presented no evidence at trial to show he fired shots accidentally; therefore, an instruction on accident is not warranted.
 {¶ 111} Finally, regarding his claim that counsel improperly conceded murder, the remark by counsel he complains of was made in the following portion of defense's closing argument:
 {¶ 112} "As you recall during voir dire, I asked you if you had any emotional reason because this case is a murder case that you could not come in with a finding of not guilty, and your response was no you could do so. I suggest to you because this case is clearly murder, but it's solely about how it happened, that the photos you will see of the autopsy, the clothes you will see are really irrelevant. They are designed to appeal to your emotion. I beg you, please don't allow that to happen." (Tr. 1513.)
 {¶ 113} We do not perceive the reference to murder here to constitute a concession of guilt, especially when the transcript reveals that during closing argument, counsel argued that the defendants had acted in self defense to fend off the vehicle whose passengers were shooting at them; urged the jury not to let the gang issue obscure the case; and proclaimed Jones' innocence throughout his argument. Thus, the record rebuts Jones' claim that his counsel conceded murder.
 {¶ 114} Accordingly, we reject this assignment of error.
 {¶ 115} His twelfth assignment of error states:
 {¶ 116} "DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HIS MOTION FOR JUDGMENT OF ACQUITTAL WAS OVERRULED."
 {¶ 117} Jones argues his conviction is not supported by sufficient evidence and the court should have granted his motion to acquit.
 {¶ 118} Crim.R. 29 provides:
 {¶ 119} "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."
 {¶ 120} The test for sufficiency raises a question of law to be decided by the court before the jury may receive and consider the claimed offense. In State v. Martin (1983), 20 Ohio App.3d 172, the court summarizes the standard of review for an insufficiency claim:
 {¶ 121} "* * * [T]he test is whether after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence." (Citations omitted.)
 {¶ 122} Here, the record contains evidence that Jones and his codefendants each grabbed a gun and shot in the direction of the white vehicle, that a bullet that came from that area penetrated the wall of the Culbreath home and hit and killed Warren Culbreath, that police recovered a 7.62 shell casing in the general vicinity of 11815 Kelton, and that a 7.62 round bullet killed Warren. Given this state of the evidence, we conclude any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. This assignment of error is not well-taken.
 {¶ 123} The thirteenth assignment of error states:
 {¶ 124} "DEFENDANT WAS DENIED DUE PROCESS OF LAW AND EQUAL PROTECTION OF THE LAW WHEN HE WAS SENTENCED FOR MURDER TO FIFTEEN (15) YEARS TO LIFE FOR THE FUNCTIONAL EQUIVALENT OF INVOLUNTARY MANSLAUGHTER."
 {¶ 125} Jones argues R.C. 2903.02(B) violates the constitutional guarantee of due process and equal protection because it does not require the state to prove the culpable mental state of purpose and also because it prohibits the same conduct as the involuntary manslaughter statute but imposes a more severe punishment.
 {¶ 126} R.C. 2903.02(B) provides that no person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree, while involuntary manslaughter is defined in R.C.2903.04(A) as follows:
 {¶ 127} "No person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony."
 {¶ 128} R.C. 2903.02(B), effective June 30, 1998, has been challenged numerous times by defendants convicted under this statute. The courts, including our court, have consistently determined that the statute passes constitutional muster. See, e.g., State v. Miller, Cuyahoga App. No. 79949, 2002-Ohio-2257; State v. Dixon, Montgomery App. No. 18582, 2002-Ohio-541; State v. Bowles (May 11, 2001), Lake App. No. 99-L-075; State v. Luttrell (Nov. 2, 2001), Montgomery App. No. 18496, 2001-Ohio-1702; State v. Smathers (Dec. 20, 2000), Summit App. No. 19945; State v. Hayden (July 14, 2000), Lake App. No. 99-L-037.
 {¶ 129} Specifically, Jones argues, first, that the statute relieved the state of proving a culpable mental state, in violation of due process. We disagree. As the court in Hayden, supra, states:
 {¶ 130} "Under the common law approach, R.C. 2903.02(B) does not relieve the state of the burden of proving mens rea simply because the intent to kill is conclusively presumed so long as the state proves the required intent to commit the underlying felony. At common law, `malice aforethought' was ascribed to a felon who killed another in the perpetration of an inherently dangerous felony such as rape, robbery, or burglary. Specifically, under the common law rule, the United States Supreme Court recognized that `prosecutors do not need to prove a culpable mental state with respect to the murder because intent to kill is conclusively presumed if the state proves intent to commit the underlying felony.' Hopkins v. Reeves (1998), 524 U.S. 88, 91-92, 141 L.Ed.2d 76, 118 S.Ct. 1895."
 {¶ 131} Regarding Jones' second constitutional claim involving equal protection, the court in State v. Wilson (1979), 58 Ohio St.2d 52, considered a similar equal protection challenge and stated:
 {¶ 132} "The issue here is whether both statutes require the state to prove identical elements while prescribing different penalties. * * * `[T]he test is whether, if the defendant is charged with the elevated crime, the state has the burden of proving an additional element beyond that required by the lesser offense.' [citation omitted.] Therefore, if the statutes prohibit identical activity, require identical proof, and yet impose different penalties, then sentencing a person under the statute with the higher penalty violates the Equal Protection Clause." Wilson, supra, at 55.
 {¶ 133} The equal protection inquiry here thus concerns whether R.C. 2903.02(B) requires the proof of an additional element beyond that required by R.C. 2903.04(A). The court in Dixon, supra, has addressed this exact issue and provided the following analysis, with which we agree:
 {¶ 134} "A comparison of the felony murder statute, R.C. 2903.02(B), and the involuntary manslaughter statute, R.C. 2903.04(A), reveals that they do not prohibit identical activity and require identical proof. Causing another's death as a proximate result of committing any felony, which is sufficient to prove involuntary manslaughter, is not always or necessarily sufficient to prove felony murder. In order to prove felony murder the State is required to prove more: that the underlying felony is an offense of violence, defined in R.C. 2901.01(A)(9), that is a felony of the first or second degree, and not a violation of R.C. 2903.03 or 2903.04.
 {¶ 135} "While proof of felony murder, R.C. 2903.02(B) would always and necessarily prove involuntary manslaughter, R.C. 2903.04(A), the converse is not true. Proof of involuntary manslaughter is not sufficient to prove felony murder except in those particular cases where an additional requirement is met: the underlying felony is an offense of violence that is a felony of the first or second degree. Because felony murder requires proof of this additional requirement, Dixon's equal protection argument lacks merit. Wilson, supra." Dixon, supra, at *7-8.
 {¶ 136} Accordingly, we reject the constitutional challenges raised in this assignment of error.
 {¶ 137} Based on the foregoing, we affirm the judgment of the court.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, P.J., and FRANK D. CELEBREZZE, JR., J., CONCUR.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).
[1] We discuss his fourth assignment of error following our combined analysis of his seventh, eighth, and ninth assignments of error.